```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>JOHN DIAZ TORRES,<br><br>**Defendant.** | CRIM. NO. 20-457 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge.

Pending before the Court is Defendant John Diaz-Torres' *Motion to Suppress Statements* ("*Motion to Suppress*") and the Government's opposition thereto. (Docket Nos. 39 and 43). For reasons set forth below, the Court **DENIES** the *Motion to Suppress*.

### I.   BACKGROUND

On March 17, 2021, a Grand Jury returned a four-count Superseding Indictment against Defendant John Diaz-Torres ("Defendant" or "Diaz-Torres"). (Docket No. 21). Count One charges a violation of 18 U.S.C. 922(o)(1) (Possession of a Machine Gun). Id. at 1. Count Two charges violations of 18 U.S.C. 924(c)(1)(A) and 924(c)(1)(B)(ii) (Possession of a Machinegun in Furtherance of a Drug Trafficking Crime). Id. at 2. Count Three charges a violation of 18 U.S.C. 924(c)(1)(A) (Possession of Firearms in Furtherance of a Drug Trafficking Crime). Id. at 2-3. Lastly, Count

Four charges a violation of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substances) and Count Five charges violations to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)) (Firearms and Ammunition Forfeiture Allegation). Id. at 3.

The firearm was allegedly seized on December 17, 2020 from Defendant's residence pursuant to a state-issued search warrant. (Docket No. 1-1 at 2). On that date, Puerto Rico Police Department ("PRPD") Narcotics agents from the Guayama division approached the residence and saw Diaz-Torres sitting on a nearby curb. Id. at 4. The Complaint states that PRPD agents then observed a baggie of heroin on his lap, after which he was arrested and read his Miranda rights. Id. The agents seized the following items from his person:

- One (1) Ziploc bag with ten (10) decks of heroin
- Fifty-six dollars ($56.00) in cash
- One (1) Cellphone

Id. The substance field tested positive for heroin. Id.

The agents then entered Diaz-Torres' home and detained his mother, grandmother, grandfather, brother Luis Fonseca-Torres ("Fonseca-Torres") and friend, Cristian Cruz-Ortiz ("Cruz-Ortiz"). Id. They searched the home and seized:

- One (1) Firearm - a Black / Glock / Model 23 / .40 caliber (slide only) with serial number: GVW 852 and a Black polymer 80 frame loaded with an extended clear magazine. Forty (40) .40 caliber rounds were also recovered inside a black Jordan backpack outside the rear of the residence.

- Six (6) .40 caliber magazines were found inside a black Jordan backpack outside the rear of the residence.

- One (1) Firearm described as a Silver / Steel City Arsenal (slide only) / 9 mm with no serial number, with a Tan polymer 80 frame loaded with an extended magazine. Forty-nine (49) 9 mm rounds were also recovered from inside a black Jordan backpack outside the rear of the residence.

- One (1) Ziploc bag containing approximately twenty-two (22) decks of heroin, fifteen (15) small baggies of cocaine and two (2) small cylinders of crack cocaine were found on Cruz-Ortiz.

- One (1) Black Kevlar body armor was found in a bedroom next to the hallway bathroom.

- One (1) small baggie of cocaine was found inside the closet in the right rear bedroom.

- One (1) small cylinder containing crack cocaine was found underneath a couch cushion.

Id. at 3. The substances field tested positive for heroin and cocaine. Id.

All individuals were read their Miranda warnings. Id. While Defendant's mother and grandparents were questioned and released, Diaz-Torres, Fonseca-Torres and Cruz-Ortiz were arrested and transferred to the Guayama PRPD Narcotics division. Id. At around 8:50am, Diaz-Torres was given written Miranda Rights and Warnings by PRPD agents, which he read and signed, stating he was not waiving his rights. (Docket No. 39 at 1). At that point, he did not provide any statements to the agents. Id. at 1-2.

PRPD Narcotics agents detained Defendant in a jail cell until his second interrogation with agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") at around 1:30pm. Id. at 2. At that interrogation, which was recorded through an audio recording device, ATF agents read Defendant his Miranda rights in Spanish, and after stating he understood them, he spoke with the agents. (Docket No. 1-1 at 4). He admitted to possessing the heroin found on him and to selling narcotics. Id. He also stated the firearms and ammunition from the rear of the home were his, as was the Kevlar vest found inside the home. Id. at 5. He also admitted knowing the firearms were chipped, *i.e.* that they were machine guns, when he bought them. Id. ATF agents performed function tests on these and they preliminarily function as machine guns. Id.

At a time not stated in the ATF interview recording, and while Defendant waited to be processed, ATF agents allegedly approached him to interrogate him. (Docket Nos. 39 at 2; 43 at 3). During this time, he made inculpatory admissions stating the guns were his and that his family had nothing to do with the items. Id. He apparently also stated the drugs found on him were his. (Docket No. 43 at 3).

On September 2, 2021, Defendant filed his *Motion to Suppress*. (Docket No. 39). He avers he invoked his right to counsel (Sixth Amendment) and right to remain silent (Fifth Amendment) by not waiving his Miranda rights during the interrogation with the PRPD

agents. Id. at 3-7. He also alleges that statements made during the second interrogation were coerced because the ATF agents threatened to further detain his mother and grandmother, who were allegedly detained at the station while he was being interrogated. Id. at 7-9.[1] Diaz-Torres maintains that this, coupled with the fact that he was nineteen years old, had an eighth-grade education, and no prior arrest history, led him to being coerced into making inculpatory statements. Id. Because he invoked his right to counsel and to remain silent during the first interrogation, rights which the PRPD and ATF purportedly violated by further interrogating him, the "fruits of his illegal arrest and interrogation should be suppressed." Id. at 10.

On September 23, 2021, the Government responded to the *Motion to Suppress* ("*Response*"). (Docket No. 43). It posits it does not seek to introduce statements or admissions made by Diaz-Torres during the recorded interrogation with ATF agents, thus any request to that effect is moot. Id. at 1. It also asserts that statements made by Defendant while not being interrogated by agents qualify as voluntary statements which should not be suppressed. Id. at 4-6. The Government contends the record is devoid of evidence that Diaz-Torres was interrogated prior to or after making his

---

[1] The *Complaint* does not mention if Diaz-Torres' mother and grandmother were detained at the station while he was detained. (Docket Nos. 1 and 1-1).

inculpatory statements nor has he shown that his statements were made in response to "coercive police tactics." Id. at 6.

## II. APPLICABLE STANDARD

There is "no presumptive right to an evidentiary hearing on a motion to suppress." United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013) (citation omitted). The decision to hold a hearing is left to the district court's discretion. *See* United States v. Flete-Garcia, 925 F.3d 17, 34 (1st Cir. 2019), cert. denied, 140 S. Ct. 388 (2019) (quotation omitted). It must be held only when a movant "makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." United States v. Gordon, 871 F.3d 35, 50 (1st Cir. 2017) (quotation omitted). Thus, a movant must show that these factual disputes, "if resolved in his favor, would entitle him to the requested relief." Id. (quotation omitted).

## III. DISCUSSION

Firstly, the Court finds that Diaz-Torres has not shown he is entitled to an evidentiary hearing considering he failed to allege detailed and specific facts warranting a hearing. *See* United States v. Villa-Guillen, 525 F. Supp. 3d 293, 294 (D.P.R. 2021) ("[t]he burden is on the defendant to allege facts, sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.") (quoting United States v. Allen, 573 F.3d 42, 51 (1st Cir. 2009)).

Secondly, the Government has shown that Diaz-Torres failed to sufficiently allege that the inculpatory statements should be suppressed. The Government bears the burden of proving by a preponderance of the evidence that the statements at issue were voluntary and not a Miranda violation. *See* United States v. Agosto Vega, 2005 WL 8153030, at *1 (D.P.R. 2005), report and recommendation adopted, 2005 WL 2275924, at *2 (D.P.R. 2005). The Government has met such a burden.

Diaz-Torres asserts he made inculpatory statements because he was being coerced and threatened by the ATF agents, yet he provides no evidence to sustain this assertion. (Docket No. 39 at 9). Moreover, the threats preceding the inculpatory statements supposedly occurred during the recorded interrogation with ATF agents. Id. But, as explained in the *Response*, the Government does not seek to introduce statements from this interrogation into evidence. (Docket Nos. 39 at 9-10; 43 at 1). All that remains are Diaz-Torres' statements at an unknown time while awaiting processing. These statements include the possession of the chipped firearms, that the heroin found on him was his, and that his family had nothing to do with the items. (Docket Nos. 39 at 2; 43 at 3).

The United States Supreme Court has interpreted interrogation to be "either express questioning or its functional equivalent." United States v. Jackson, 544 F.3d 351, 357 (1st Cir. 2008) (quoting Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980)).

Interrogation includes words or actions by police, other than actions normally associated with arrest and custody, that they should know are reasonably likely to provoke an incriminating response from a suspect. *See* Rivera v. Thompson, 879 F.3d 7, 14-15 (1st Cir. 2018) (quotation omitted). Unsolicited or voluntary statements not derived from an interrogation, are not considered Miranda violations, and should not be suppressed. *See e.g.*, United States v. McCarty, 475 F.3d 39, 45 (1st Cir. 2007) (holding that defendant's unsolicited statement of "[t]hat's mine. It's an old peacemaker" after an officer walked into a room with a firearm was not an interrogation nor a Miranda violation).

To gauge the "voluntariness" of a suspect's statements, the court must determine "whether the will of the defendant had been overborne so that the statement was not his free and voluntary act." United States v. Feliz, 794 F.3d 123, 130 (1st Cir. 2015) (quotation omitted). The Court may consider factors such as the type and length of police questioning, the defendant's physical and mental capacities, and the Government's method of interrogation. *See* United States v. Santana Cabrera, 2010 WL 11695091, at *6 (D.P.R. 2010), report and recommendation adopted, 2010 WL 11695116 (D.P.R. 2010) (quotation omitted). Notably, "only confessions procured by *coercive official tactics* should be excluded as involuntary." United States v. Boskic, 545 F.3d 69, 78 (1st Cir. 2008) (quoting Colorado v. Connelly, 479 U.S. 157 (1986))

(emphasis in original). Coercive tactics include, but are not limited to, beating a confession out of a suspect, inducing intoxication or a drugged state where further statements can be coerced from them or compelling a confession by psychological pressure. *See* United States v. Bezanson-Perkins, 390 F.3d 34, 39-40 (1st Cir. 2004); *see also* United States v. Rivera Ruiz, 797 F. Supp. 78, 80 (D.P.R. 1992) (finding that unrebutted threats that defendant's wife and children were in danger caused an involuntary confession).

However, not all police tactics are coercive. A lengthy questioning or an assurance that a suspect is not the target of an investigation is not automatically considered a "coercive" tactic. *See* United States v. Velazquez-Corchado, 2013 WL 1124678, at *5 (D.P.R. 2013), report and recommendation adopted, 2013 WL 1124508 (D.P.R. 2013) (finding that "[t]o whatever extent Velazquez believed she enjoyed immunity, any of the agents' statements that may have cultivated that belief do not amount to coercion."); *see also* Santana Cabrera, 2010 WL 11695091, at *7 (holding that defendant's post-arrest statements were voluntary in part because "[w]hile lengthy, the questioning was conducted in a serene atmosphere.") Likewise, neither is "an admonition to tell the truth (even if repeated) nor a suggestion that cooperation would lead to favorable treatment" an impermissible coercion. United States v. Carpentino, 948 F.3d 10, 28 (1st Cir. 2020).

In the case at bar, while neither party questions whether Diaz-Torres was in custody when he made the inculpatory statements, the record fails to show the PRPD or ATF agents applied undue pressure, used coercive tactics or threatened him with retaliation or violence if he failed to confess. See United States v. Genao, 281 F.3d 305, 310 (1st Cir. 2002). Hence, the Court finds that Diaz-Torres' statements **outside of the recorded interrogation** with the ATF agents were voluntary. See e.g., United States v. Carr, 2021 WL 1519503, at *6 (D. Me. 2021) (finding that defendant's voluntary statements should not be suppressed because "[w]hile the burden is on the Government, Defendant does not accuse the Government of coercive tactics besides being handcuffed and detained for what she claims to be a lengthy period.")

The First Circuit has also held that even if incriminating, defendant's voluntary statements do not tend to amount to a custodial interrogation. See United States v. Barnard, 133 F. App'x 754, 757 (1st Cir. 2005). **Therefore, the above-referenced voluntary statements by Diaz-Torres are admissible evidence.** See United States v. Pemberton, 2021 WL 3508640, at *3 (D. Mass. 2021) (finding that defendant's voluntary admission while being handcuffed that the vehicle he was driving contained "a gun, cash, and weed" was not a statement compelled by interrogation and was admissible as evidence); United States v. Mulkern, 2018 WL 6438550, at *8-10 (D. Me. 2018) (holding that suppression of defendant's

spontaneous statements that the crystal of crack cocaine in his cigarette package was his as were the drugs and money found in his vehicle was not proper).

## IV. CONCLUSION

For reasons set forth herein, Defendant's *Motion to Suppress Statements* (Docket No. 39) is **DENIED**. Per its representation to the Court described above, the Government shall not seek to introduce in evidence statements made by Defendant during the taped interrogation with ATF agents. (Docket No. 43 at 1 and 4).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of November 2021.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge